The People of the State of Illinois, Plaintiff-Appellee, *v.* Kenneth Willmore, Defendant-Appellant.

(No. 73-131; 

Fifth District—November 22, 1974.

Robert H. Rath, of Harrisburg, for appellant.

Albert W. McCallister, State's Attorney, of Carmi, for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the circuit court of White County finding him guilty of the crime of aggravated incest after a jury trial. He contends in his appeal that he was not proved guilty beyond a reasonable doubt.

The Willmore family consisted of Kenneth Willmore, his wife Donna, and five children. The eldest child is Kenneth Willmore, Jr., age 15, W. Willmore, a daughter, age 14, K. Willmore, a daughter, age 13, and two other daughters age 10 and 9 respectively.

The defendant was indicted by the grand jury of White County for having committed the crime of aggravated incest with his daughters, K. and W., on several dates during the months of April and May of 1972.

K. did not testify at the trial and the only evidence which was relevant to convict the defendant came from his daughter, W. She testified that she now lived with her grandmother, Elberta Willmore of Norris City, Illinois, and that she formerly had lived with her parents out in the

country, that her father worked at a filling station and did some farming and her mother ran a paper route. Her mother left home to deliver the papers about 3 A.M., and her father left about 5 A.M.; when her mother left for work her father would call her into his room or he would come into her room and they would have intercourse. He would do the same thing to K., sometimes in her presence. In the middle of May she called her grandmother, and in a few days a woman from the Department of Children and Family Services came to school and talked to her. They then went to the grade school and talked to her 13-year-old sister, K., and Mr. Blackman, the Superintendent of the Omaha-Norris School District No. 3. She then went to live with two different families, then with the Department of Children and Family Services, and finally went back to live with her grandmother. Her father had told her that if she told they could "get in bad trouble." She never testified as to the intercourse having taken place between either her or K. on any particular date, but said that it had been going on for a couple of years.

On cross-examination she testified that she discussed her testimony with a lady from the Department of Children and Family Services who gave her a calendar and told her that she needed to know dates and "things like that." She did not remember whether or not she talked to people from the Department about her grand jury testimony. She told her grandmother after this had been going on for 2 years because it was getting more uncomfortable all the time. When her father would come into her room he would already have started intercourse before she woke up. She had written a couple of letters to her mother and brother, but these letters had to go through the Department.

Donna Willmore, the mother of W., testified that she had no activity which took her out of the home on a daily basis until sometime in December of 1971 when they took over a paper route that they had run previously. At that time she and her husband and the son would get up about 2:30 A.M. At that time her husband would take the car and she would take the truck. They would pick up the papers at Omaha and divide them up. Her husband would then deliver the west one-half of the route and wind up at Johnson City to work in his service station. She would take the east one-half of the route and be back in time for the boy to go to school.

This routine continued until the spring of 1972 when they started farming. Then her husband would come in from work at the station, get on the tractor and work as late as possible and then go to bed. He started to get into the fields about the first of May. This changed his work routine because it would be midnight or one A.M. before he got to bed, so he

couldn't get up at 2:30 to go on the paper route. She then commenced to handle the paper route until the end of May when they ceased because of the trouble.

She further testified that up to the first day of May, 1972, there was no regular time that her husband would be at home and she would be gone, except in January and February of 1972 when she operated a Sunday paper route. During that time she would get up at 3 A.M. and her husband at 5 A.M.

She first learned of "these" accusations on May 22, 1972, when the children did not come home from school. She went to the school to find out where the children were.

As a mother she had talked with her two oldest girls about boys and how to behave with them. She was close to both of them and neither of the older girls ever indicated to her in any way that they had sexual relations with her husband. Her and her husband's sexual relations were normal.

■■ Where a conviction for a crime of this kind depends upon the testimony of the complaining witness and the defendant denies the charge, the testimony of the complaining witness must be corroborated. This rule does not apply where the testimony is clear and convincing. *People v. Rogers*, 391 Ill. 264.

The only evidence that could conceivably tend to corroborate the testimony of the complaining witness was medical testimony that she was not a virgin. Assuming that she was not, this would offer little aid to the State's case because there was no testimony that her father was the only one she had sexual relations with.

■■ Since there is no corroboration of her testimony, we must decide whether her evidence was so clear and convincing that the defendant's conviction can stand on the complaining witness's testimony alone. We think not. She was close to her mother and made no complaint of her father's conduct to her at any time. Why she called her grandmother instead of telling her mother is not clear. She said that her father had been having sexual relations with her for 2 years while her mother was out of the house between 3 A.M. and 5 A.M. in the morning. Her mother testified unequivocally that this could not be true. The mother testified that she was close to W. and that W. had never complained to her of any sexual activity between her and her father. The father unequivocally denied having sexual relations with either of his daughters. Although the indictments alleged that the defendant had intercourse with both K. and W. on several different dates in April and May of 1972, there was no testimony of this happening on any specific dates.

From the record before us we must conclude that the State has failed to prove the defendant guilty beyond a reasonable doubt.

Reversed.

EBERSPACHER and CREBS, JJ., concur.